IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MARY PUGH, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 10 C 7176 |
| CHICAGO TEACHERS UNION, MARILYN STEWART, JUNE DAVIS, and DIANE MYRON, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Mary Pugh, appearing *pro se*, has sued the Chicago Teachers Union (CTU), Marilyn Stewart, June Davis, and Diane Myron. She asserts claims of discrimination based on color, violation of her constitutional right to equal protection, breach of the union's duty of fair representation, and breach of contract. Defendants have moved to dismiss the claims. For the reasons stated below, the Court grants defendants' motion.

### Background

The Court accepts plaintiff's allegations as true for purposes of resolving the motion to dismiss. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Mary Pugh began working at Tilden Career Community Academy, a public high school in Chicago, in 1999. She worked as a Student Special Service Advocate, a position that involved working with students who had special needs. In the position, she

was a member of the CTU. Stewart, Davis, and Myron are apparently employees of the CTU.

Pugh alternatively claims that almost immediately after beginning work, or in 2007, she learned that she had been misclassified as a teacher's aide, a job with different salary and duties. Pugh suggests that an administrative worker at Tilden may have in turn been misclassified as a special service advocate, in effect receiving the benefits of Pugh's position without doing the work.

Pugh took her problem to Tilden's principal, Phylis Hammond. Instead of ensuring that Pugh's classification was correct, Pugh alleges, Hammond retaliated against her. Specifically, Hammond no longer allowed Pugh to coach girl's basketball, volleyball, and soccer, even though she was a popular and successful coach. Pugh also began receiving much lower performance evaluations.

Pugh's problems with Hammond escalated in 2010. Pugh was disciplined after a hearing that she did not attend in April 2010. She claims that she did not receive notice of the hearing until after it had occurred. In June 2010, she received notice of another disciplinary hearing only two days before it was to occur. Pugh requested that the meeting be rescheduled, but her request was denied. She did not attend the hearing, and it is unclear whether any discipline resulted from it. In July 2010, Tilden's new principal, Marcey Sorenson, informed Pugh that she did not have a position at Tilden that summer and ordered a Chicago police officer to escort Pugh from the building. The Chicago Board of Education (CBE) sent Pugh a notice that she had been laid off at the end of the month.

From 2007 until the time that she was terminated, Pugh filed at least sixteen

grievances with the CTU related to her misclassification and the retaliation by Hammond. She claims that the CTU failed to adequately pursue these grievances with the CBE. Pugh also filed several charges against both the CTU and the CBE with the Illinois Educational Labor Relations Board (IELRB). *See* 115 ILCS 5/5. Four of the charges concerned the CTU, and the IELRB or its executive director dismissed all of them. *See* Ill. Admin. Code tit. 80, § 1120.30(b) & (c). It does not appear that Pugh ever sought review of the IELRB's decisions in the Illinois Appellate Court. *See* 115 ILCS 5/16.

## Discussion

Defendants have moved to dismiss Pugh's claims against them for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). A plaintiff "has stated a claim only if [she] has alleged enough facts to render the claim facially plausible, not just conceivable." *Id.* The Court, "however, construe[s] pro se complaints liberally and hold[s] them to a less stringent standard than formal pleadings drafted by lawyers." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

### A. Duty of fair representation

Pugh claims that the union failed to represent her fairly in her conflicts with the CBE. Defendants argue that this claim is within the exclusive jurisdiction of the IELRB.

Under the Illinois Education Labor Relations Act (IELRA), a union's violation of its

3

duty of fair representation is considered an unfair labor practice. 115 ILCS 5/14(b)(1). The statute provides that "[a] charge of unfair labor practice *may* be filed with the Board." *Id.* 5/15 (emphasis added). The statute also allows for review of the decisions of the board in the Illinois Appellate Court. *Id.* 5/16.

Despite the IELRA's use of the word "may," the Illinois Supreme Court has held that the IELRB has exclusive initial jurisdiction over charges alleging another type of unfair labor practice: refusal to comply with a binding arbitration award entered pursuant to a collective bargaining agreement. *Board of Educ. of Cmty. Sch. Dist. No. 1 v. Compton*, 123 Ill. 2d 216, 220–21, 526 N.E.2d 149, 151–52 (1988). The court recognized that IELRA and its companion statute, the Illinois Public Labor Relations Act (IPLRA), "were an attempt to provide a comprehensive regulatory scheme for public sector bargaining in Illinois." *Id.* at 221, 526 N.E.2d at 152 (internal quotation marks omitted).

Two Illinois courts have used the reasoning of the court in *Compton* to conclude that a charge that a union has breached its duty of fair representation must be brought before the appropriate board under the IPLRA. *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 161–63, 693 N.E.2d 1264, 1267–69 (1998); *Foley v. Am. Fed'n of State, County & Mun. Emps., Council 31*, 199 Ill. App. 3d 6, 10, 556 N.E.2d 581, 583–84 (1990). Although the IPLRA, like the IELRA, does not contain language making the board's jurisdiction exclusive, the courts recognized that the comprehensive regulatory scheme intended by the Illinois legislature required exclusivity. *Cessa*, 296 Ill. App. 3d at 163, 693 N.E.2d at 1268–69. "Concurrent jurisdiction in the circuit courts would allow inconsistent decisions and forum shopping, which would undermine the goal of

4

uniformity sought to be achieved by the [IPLRA] and IELRA." *Id.* at 163, 693 N.E.2d at 1269.

The Court concludes that under the reasoning of the courts in *Compton*, *Cessna*, and *Foley*, the IELRB has exclusive jurisdiction over Pugh's duty of fair representation claim. *See Proctor v. Bd. of Educ., Sch. Dist. 65*, 392 F. Supp. 2d 1026, 1031 (N.D. Ill. 2005) (federal court has no jurisdiction over claim that school district breached collective bargaining agreement because IELRB had exclusive jurisdiction). Pugh has unsuccessfully brought charges against the CTU before the IELRB and may be effectively attempting to appeal the Board's adverse rulings in this suit, but "federal court would not be the correct forum for such an appeal." *Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905 (N.D. Ill. 2008) (noting that decisions of the IELRB are appealable to the Illinois Appellate Court).

The Court dismisses this claim on the ground that it lacks jurisdiction over the claim.

**B.    Discrimination based on color**

Pugh asserts a claim that CTU and its employees discriminated against her because of her color. 42 U.S.C. §§ 1981(a), 2000e-2(c); *see Bennett v. Roberts*, 295 F.3d 687, 697–98 (7th Cir. 2002) (Title VII and § 1981 claim have same standard and if plaintiff cannot succeed on one claim she cannot succeed on the other). "Establishing a prima facie Title VII claim against the Union based on a breach of a duty of fair representation requires the plaintiff[ ] to show that (1) [the employer] violated the collective bargaining agreement with respect to the plaintiff[ ], (2) the Union permitted the breach to go unrepaired, thus breaching its own duty of fair representation, and (3)

5

there was some indication that the Union's actions were motivated by discriminatory animus." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir. 1985); *accord Colangelo v. Motion Picture Projectionists, Operators & Video Technicians, Local 110*, No. 01 C 9417, 2004 WL 406770, at *5 (N.D. Ill. Feb. 26, 2004).

In the materials Pugh has filed as her complaint and response to the motion to dismiss, there is nothing to indicate plausibly that any of the union's actions, or those of its employees, were motivated by discriminatory animus. She alleges only that the union refused to prosecute any of the grievances that she filed. The only explanation of the union's conduct she ever gives is speculation that Davis, who was assigned to process some of the grievances, was an friend or possibly a relative of Hammond's. Pugh has also not alleged that any other similarly situated union member was treated less favorably; she does not mention any other union member's experience with grievances.

Nor does Pugh ever allege that her problems with Hammond and the CBE were the result of discrimination. Without even an allegation of discrimination on the part of the union, or even that it was aware of and complicit in discrimination by the CBE, Pugh's discrimination claim must be dismissed. *Cf. Babrocky*, 773 F.2d at 869 (sufficient evidence of discriminatory animus to defeat summary judgment when two job classifications were entirely sex segregated without objection from union and union requested that employer lay off more women and not lay off any men).

The Court dismisses this claim.

**C.     Violation of equal protection rights**

Pugh asserts a claim under 42 U.S.C. §§ 1983, 1985(3) and 1986, alleging that

6

the CTU violated her constitutional rights by denying her equal protection of the laws. A section 1985(3) claim requires a conspiracy, and "[t]he plaintiff must show some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). "Similarly, a claim under [section] 1983 alleging racial discrimination must allege purposeful discrimination." *Id.*

As discussed above, Pugh has not alleged any purposeful racial discrimination or discriminatory animus on the part of CTU, its employees, or even Hammond and the CBE. Accordingly, her section 1983 and 1985 claims fail. "And because [plaintiff] has failed to state a section 1985 claim, h[er] [section] 1986 claim fails as well." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).

The Court dismisses this claim.

**D.     Breach of contract**

Pugh asserts a breach of contract claim. "The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Asset Exch. II, LLC v. First Choice Bank*, _ Ill. App. 3d _ 953 N.E.2d 446, 454–55 (2011).

Pugh does not identify what contract she had with the CTU or the other defendants. Nor does she allege what actions in particular by defendants breached a contract. Accordingly, the Court dismisses this claim.

Furthermore, nothing in Pugh's complaint or response indicates that there is any

7

basis to exercise original jurisdiction over this claim; there is only supplemental jurisdiction. 28 U.S.C. § 1367(a). The Court has dismissed all claims over which it had original jurisdiction and this case is still at the pleading stage. Even were Pugh to be able to state a breach of contract claim, the Court would decline to exercise supplemental jurisdiction over this claim. *Id.* § 1367(c)(3); *see Fields v. Wharrie*, 672 F.3d 505, 518–19 (7th Cir. 2012) (in the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial").

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss [docket no. 42]. Defendants' motion to file a second amended memorandum in support of their motion to dismiss [docket no. 38] is terminated. Unless plaintiff files, by no later than May 23, 2012, a motion for leave to amend attaching a proposed amended complaint that states a viable federal claim, the Court will enter judgment against her.

_____
MATTHEW F. KENNELLY
Date: May 8, 2012                                            United States District Judge